CENTER FOR BIOLOGICAL DIVERSITY; Oregon Natural Resources Council Fund; Pacific Rivers Council; Waterwatch, Plaintiffs—Appellants,

v.

U.S. FISH & WILDLIFE SERVICE, Defendant—Appellee,

Building Industry Association of Washington; Washington Cattlemen's Association; Washington Contract Loggers Association; Washington State Dairy Federation; Washington Farm Bureau Federation, Defendant–Intervenor—Appellees.

No. 06–35080.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 2008.

Filed April 18, 2008.

Stephen D. Mashuda, Earthjustice Legal Defense Fund, Seattle, WA, Stephanie M. Parent, Portland, OR, for Plaintiffs–Appellants.

M. Alice Thurston, David C. Shilton, Meredith L. Flax, DOJ—U.S. Department of Justice, Washington, DC, for Defendant–Appellee.

Ross Day, Tigard, OR, Meriem L. Hubbard, Damien M. Schiff, Pacific Legal Foundation, Sacramento, CA, for Defendant–Intervenor–Appellees.

Before: FERNANDEZ and BERZON, Circuit Judges, and WRIGHT *, District Judge.

## MEMORANDUM **

The Center for Biological Diversity ("CBD") appeals from an order of the district court granting summary judgment in favor of the United States Fish & Wildlife Service ("FWS") and Intervenor–Defendants Building Industry Association of Washington, et al. ("BIAW"). The order upheld a decision by the FWS not to designate the Southwestern Washington/Columbia River ("SWW/CR") Distinct Population Segment ("DPS") of the Coastal Cutthroat Trout ("CCT") as threatened under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–1544. We affirm in part, reverse in part, and remand.

CBD argues that FWS failed to consider sufficiently whether this DPS of the CCT

---

* The Honorable Otis D. Wright II, United States District Judge for the Central District of California, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

was threatened in the Lower Columbia River ("LCR"), which is a significant portion of the DPS's range. It also asserts that FWS failed to consider at all whether the marine, estuary and near-shore ocean areas of this DPS constitute a significant portion of its range.

1. The agency concedes that the LCR is a significant portion of the DPS's range; the parties dispute whether the agency sufficiently considered whether the DPS was threatened in the LCR, as opposed to the entire geographic range.

■ Upon review of the record, we are satisfied that FWS's determination that this DPS of the CCT is not threatened in the LCR was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see also Nw. Ecosystem Alliance v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1140 (9th Cir.2007). After assessing the available data, FWS "no longer conclude[s] that returns of anadromous cutthroat trout in almost all lower Columbia River streams have 'declined markedly over the last 10 to 15 years' as described in the proposed rule." Endangered and Threatened Wildlife and Plants; Withdrawal of Proposed Rule To List the Southwestern Washington/Columbia River Distinct Population Segment of the Coastal Cutthroat Trout as Threatened ["Withdrawal Notice"], 67 Fed.Reg. 44934, 44940 (July 5, 2002). Instead, FWS found that "[r]esident/freshwater forms remain well distributed and at reasonable densities in the lower Columbia River," *id.* at 44949,

and that "we do not find that population trends indicate that coastal cutthroat trout are likely to be extirpated from *any significant portion of their range* in the foreseeable future." *Id.* at 44959 (emphasis added). Moreover, the agency specifically discussed the LCR at several points throughout its decision.

Thus, while FWS's decision lacks perfect clarity at some points, overall it did consider the evidence before it and the required factors[1] and determined that the DPS is not threatened in the LCR as such. A mere lack of " 'ideal clarity' " is not sufficient to cause us to overturn FWS's actions where, as here, " 'the agency's path may reasonably be discerned.' " *Beno v. Shalala*, 30 F.3d 1057, 1073–74 (9th Cir. 1994) (quoting *Motor Vehicle Ass'n v. State Farm Ins.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983)).

■ 2. In contrast, the FWS did not properly consider whether the estuary and other marine areas constitute a significant portion of the range of this DPS. First, the Withdrawal Notice recognizes that there has been degradation of the estuary and marine areas. Withdrawal Notice, 67 Fed.Reg. at 44948. Second, the agency's own reasoning underscores the significance of these areas to the DPS: They are vital to the anadromous life-form of the DPS,[2] and the anadromous life-form is important to the DPS's long-term survival strategy.[3] Although there is also some evidence that other life-forms can spawn anadromous life-forms, the Withdrawal Notice recognizes that this is only signifi-

---

1. *See* 16 U.S.C. § 1533(a)(1); *see also* 50 C.F.R. § 424.11(c).

2. *See* Withdrawal Notice, 67 Fed.Reg. at 44935 ("Anadromous coastal cutthroat trout spawn and complete early rearing in headwater stream sections ... and then migrate downstream eventually entering the estuary

and near ocean environment to complete growth and maturation.").

3. *See id.* at 44940–41 ("The anadromous life history strategy is likely important to the DPS for genetic mixing in the long-term and for potential recolonization after catastrophic events.").

cant if there are estuary and marine areas for the anadromous fish to inhabit.[4] Thus, because the agency's own reasoning recognizes the danger to the estuary and marine areas and the importance of those areas, FWS was required to consider whether those areas constituted a significant portion of the range. *See Defenders of Wildlife v. Norton*, 258 F.3d 1136, 1145 (9th Cir.2001).

Although the agency now argues that the areas are not a significant portion, we can only consider what the agency did, not what it could have done. Thus, the appropriate analysis had to be made in the agency's decision. Its absence makes the ultimate decision arbitrary, and requires us to remand. *See Defenders*, 258 F.3d at 1146–47 & n. 12. Therefore, we must reverse the district court's decision and remand to the district court with directions that the case be remanded for further consideration in light of this disposition.[5]

AFFIRMED in part, REVERSED in part, and REMANDED.

**Each party shall bear its own costs on appeal.**

---

4. *See id.* at 44936 ("[T]he significance and long-term success of freshwater cutthroat trout contributing to the saltwater migrant [or anadromous] cutthroat trout may be largely dependent upon the ability of downstream habitat conditions and near-shore environments to support the persistence of this life history strategy.").

5. We have not overlooked BIAW's assertion that the ESA does not authorize listing of a DPS of a subspecies. However, FWS has interpreted the ambiguous language of 16 U.S.C. § 1532(16) to allow just such a listing. *See* Policy Regarding the Recognition of Dis-

tinct Vertebrate Population Segments Under the Endangered Species Act, 61 Fed.Reg. 4722, 4724 (Feb. 7, 1996). Because that is a permissible construction of the statute, we must accord it deference. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Nw. Ecosystem Alliance*, 475 F.3d at 1143. Thus, we reject BIAW's attack.

